UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD HACKER,

        Petitioner,        Case Number: 06-12425-BC
                                    Honorable David M. Lawson

v.

FEDERAL BUREAU OF PRISONS, Case
Manager T.A. PEREZ, Counselor
BILLINGSLEY, Case Manger MAKSIMOWICZ,
Unit Manager R. ESQUIBEL, Case Manager
CHEATHAM, and Warden H.J. MARBERRY,

        Respondents.
_____/

## OPINION AND ORDER DENYING PETITIONER'S
## MOTION FOR PRELIMINARY INJUNCTION

    This matter is before the Court on the petitioner's motion for preliminary injunction. The petitioner, an inmate presently confined at the Federal Correctional Institution in Milan, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the failure of the Bureau of Prisons (BOP) to place him in a Community Corrections Center (CCC) for the duration of his sentence. His petition includes a challenge to regulations that govern placement within BOP facilities in the course of the execution of his sentence.

    On July 28, 2006, the Court denied the petitioner's request for a temporary restraining order but appointed counsel and scheduled the preliminary injunction motion for a hearing. The United States filed a response to the motion arguing that the issue is not properly raised in a section 2241 petition, the petitioner has not exhausted his administrative remedies, and the petitioner has not shown a reasonable likelihood of success on the merits. The Court heard argument from counsel for the parties in open court on August 28, 2006. The Court now finds that the petitioner's challenge

via 28 U.S.C. § 2241 to his placement by the BOP is proper; his challenge to the regulations was not exhausted but there is a valid basis to waive exhaustion of that issue; and he is not entitled to a preliminary injunction because the decision not to place the prisoner in a CCC was not based solely on the regulations, but rather on other considerations that have not been questioned through the prison grievance process. Therefore, the Court will deny the motion for preliminary injunction.

I.

Ronald Hacker filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on May 31, 2006, challenging the validity of certain Bureau of Prisons (BOP) regulations that govern placement within BOP facilities in the course of the execution of his sentence. The petitioner pleaded guilty in 2002 to one count of attempted possession of cocaine with intent to distribute, and the trial court sentenced him to a prison term of 60 months to be followed by four years of supervised release. He states that he has been denied placement in a CCC, explaining in his petition:

> At the time Plaintiff accepted the plea offer and plead[] guil[t]y, and at the time of sentencing, the Bureau of Prisons could, in its discretion, designate defendants, such as Plaintiff, to serve their full sentences, or any portions thereof, in a Community Correction Center . . . also known as halfway house, rather than a federal prison.
>
> During the term of Plaintiff's incarceration at F.C.I., Milan, Defendant's [sic] informed Plaintiff on several different days, that under BOP policy, Plaintiff could only be placed in a CCC for no more than 10 percent of the total actual sentence served, not counting good time, which is 5 1/2 months in a CCC. Defendant's [sic] approved Plaintiff for a transfer to a CCC in Youngstown, Ohio, and that [sic] said transfer was to take place on September 23, 2006.
>
> On or about May 1, 2006, Defendant's [sic] informed Plaintiff, that the CCC in Youngstown, Ohio is full until February 2, 2007, and that Plaintiff would be transferred to the CCC on Feb. 2, 2007.

> On or about May 8, 2006, Defendant's [sic] informed Plaintiff, that the CCC did not want to accept Plaintiff on Sept. 23, 2006, because Plaintiff has no insurance and that Plaintiff has some medical problems.
>
> On or about May 15, 2006, Defendant's [sic] informed Plaintiff, that no one can go to the CCC without hospitalization insurance.
>
> On or about May 15, 2006, Plaintiff informed Defendant's, [sic] that the 8th Circuit condemns BOP's categorical approach to halfway house transfer policy.  Plaintiff then requested an immediate transfer to a CCC or home confinement.  Defendant's [sic] response: "Your [sic] not in the 8th Circuit."  And denied said request.
>
> During the term of Plaintiff's incarceration at F.C.I., Milan, Plaintiff has suffered from medical problems related to past open heart sur[g]ery, back and leg complications, requiring recurrent balancing of medicines, generally much better performed by local medical practitioners, who would be consistently treating Plaintiff, than by medical services available to Plaintiff at F.C.I., Milan.  Medical staff at F.C.I., Milan, have failed to provide Plaintiff proper medical treatment.

Petition for Writ of Habeas Corpus at 4-5.

The nature of the alleged policy that "no one can go to the CCC without hospitalization insurance" is not clear, and the respondent does not offer any new information on this matter in its response.  However, a Program Statement available on the Bureau of Prisons website states:

> 10.   LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS.  Inmates in the following categories shall not ordinarily participate in CCC programs:
>       . . .
>       c.   Inmates who require inpatient medical, psychological, or psychiatric treatment.

Bureau of Prisons Program Statement 7310.04, at 10 (Dec. 16, 1998).  Considering the petitioner's listed health problems, it is possible that he requires inpatient medical care. This may explain the BOP's refusal to place him in a CCC because he does not have hospitalization insurance, but since no record has been developed at the administrative level, the Court may only speculate as to the import of the petitioner's recital.

On June 22, 2006, the petitioner filed a motion for preliminary injunction or temporary restraining order with a request for an evidentiary hearing to bar the BOP from applying its new policy and regulation. The petitioner filed a separate motion for evidentiary hearing on June 27, 2006.

This Court denied the motion for temporary restraining order and the motion for an evidentiary hearing without prejudice. The Court set the motion for a preliminary injunction for hearing.

As the Court explained in the order denying the petitioner's other motions, the petitioner's challenge to the action of the Bureau of Prisons is based on a change in BOP regulations that occurred in 2005, implementing a Department of Justice policy that was articulated toward the end of 2002. At that time, the Bureau of Prisons issued regulations providing that it would only place prisoners in community confinement at the end of their sentences for a period not exceeding the ten percent of their sentences or six months, whichever was less.

Prior to December 13, 2002, the Bureau of Prisons was vested with the authority to determine the location of an inmate's imprisonment pursuant to 18 U.S.C. § 3621(b), which states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Another statute describes the BOP's obligation to prepare prisoners for community re-entry by placing them in community confinement. It states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c). Since the promulgation of the Sentencing Guidelines in 1987, the BOP considered CCCs to be penal or correctional facilities and therefore determined that the "imprisonment" portion of a sentence may be satisfied by confinement in a CCC. Consequently, for many years the BOP routinely honored judicial recommendations to place offenders in CCCs for an imprisonment portion of their sentences. *See United States v. Serpa*, 251 F. Supp. 2d 988, 989 (D. Mass. 2003). Prisoners could be placed in CCCs for up to six months at the end of their prison terms, regardless of the total length of their sentences. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005).

However, after the issuance of a memorandum opinion on December 13, 2002 by the Attorney General's Office of Legal Counsel (hereinafter "OLC") and the subsequent publication of 28 C.F.R. § 570.20 and 28 C.F.R. § 570.21, the BOP no longer has the discretionary authority to

place an offender in a CCC based upon criteria set forth under 18 U.S.C. § 3621(b). The memorandum opinion stated:

> When an offender has received a sentence of imprisonment, the Bureau of Prisons does not have general authority, either upon the recommendation of the sentencing judge or otherwise[,] to place such an offender in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time BOP chooses during the course of his sentence.

(December 13, 2002 OLC Memorandum). The First and Eighth Circuits held that this policy change was contrary to the plain meaning of 18 U.S.C. §§ 3621 and 3624. *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004).

The petitioner challenges the validity and implementation of 28 C.F.R. § 570.20 and 28 C.F.R. § 570.21, which went into effect on February 14, 2005. The first of these regulations "provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20. "Community confinement" includes confinement in Community Corrections Centers, also known as halfway houses, as well as home confinement. *Ibid*. The second regulation provides that the Bureau of Prisons "will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." The Bureau of Prisons will not designate a prisoner to community confinement for a longer period unless "specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority." 28 C.F.R. § 570.21.

The petitioner argues that the new regulations fall afoul of the statute. He seeks a preliminary injunction to bar the BOP from applying the new regulations to his case, as he is reaching the last six months of his sentence and seeks to be placed in a CCC. However, the petitioner also explains that he has been denied a place in a CCC both because the CCC is full and because the petitioner does not have hospitalization insurance.

II.

A.

The respondents contend that the claims advanced by the petitioner are not appropriate for habeas corpus relief. In the order denying the petitioner's other motions, this Court cited *United States v. Jalili*, 925 F.2d 889, 893 (1991), for the proposition that the petitioner's challenge to the BOP regulations regarding CCC placement was properly brought in a section 2241 petition. The Court believes that this initial determination is correct. In *Jalili*, the Sixth Circuit held that a federal prisoner's challenge to his placement in a particular BOP facility was inappropriate for adjudication in the context of 28 U.S.C. § 2255, but was cognizable under section 2241. *Ibid*. This distinction holds true post-AEDPA, as noted in the widely-cited Sixth Circuit case *Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999). In that case, the Sixth Circuit explained:

> [C]ourts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255, and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241.

*Charles*, 180 F.3d at 755-56 (citations omitted). Furthermore, in a case similar to the instant case, the Third Circuit found that the petition was properly brought under section 2241 and noted that the Second, Ninth, and Tenth Circuits held similar positions, while only the Seventh Circuit did not.

*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241-42 (3d Cir. 2005). Just last month, the Second Circuit reiterated that conclusion. *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006) (noting that "[t]he Supreme Court has indicated that 'unlawful[] confine[ment] in the wrong institution' falls within the ambit of § 2241 habeas corpus relief, because it concerns the unlawful imposition of physical restraint"). This Court holds, therefore, that the petitioner properly filed this challenge under 28 U.S.C. § 2241.

B.

The respondents next argue that the petitioner's failure to pursue administrative remedies requires dismissal of the petition. The Attorney General has promulgated regulations that establish an administrative procedure "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The procedures require that the inmate first seek an informal resolution from staff within the institution, then submit a formal request to the warden for an administrative remedy. 28 C.F.R. § 542.13(a). If the inmate is not satisfied with the warden's response, he may appeal the decision to the regional director, followed by a further appeal to the General Counsel. 28 C.F.R. § 542.15(a).

The Sixth Circuit has approved of the general principle that the Bureau of Prisons should be allowed the opportunity to consider the application of its policy to a habeas petitioner's claims before the federal courts entertain them. *See Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001). Two courts in this District have dismissed similar challenges for lack of exhaustion. *See Rodriguez v. Fed. Bureau of Prisons*, No. 4:06-CV-12631, 2006 WL 1897296 (E.D. Mich. July 11, 2006) (dismissing very similar petition for failure to exhaust administrative remedies); *Shabazz v. Marberry*, No. 2:06-cv-10922, 2006 WL 1555987 (E.D. Mich. June 5, 2006) (finding a lack of

exhaustion but dismissing on the merits because the petitioner's misconduct led to his reduction of time in community confinement).

In the Third Circuit's adjudication of *Woodall*, however, that court approved of the lower court's determination that exhaustion of administrative remedies would be futile because the petitioner challenged a BOP regulation rather than the application of the regulation to the petitioner's case. Furthermore, in *Lopez v. Davis*, 531 U.S. 230 (2001), where a federal inmate challenged a BOP regulation, the Supreme Court conspicuously made no mention of any attempts by the petitioner to exhaust administrative remedies before filing his petition in federal court: "When notified that he would not be a candidate for early release, Lopez challenged the BOP determination by filing a petition for a writ of habeas corpus, under 28 U.S.C. § 2241, in the United States District Court for the District of South Dakota." *Lopez*, 531 U.S. at 236.

The Seventh Circuit, on the other hand, has held that a petitioner raising a challenge similar to that in the case before the Court was not excused from the exhaustion requirement simply because time was running out. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Seventh Circuit did noted that section 2241 was subject to a common-law exhaustion rule. *Ibid*. This common-law exhaustion rule can be waived, however, provided that the petitioner has demonstrated good cause for excusing him from the requirement. *Laing v. Ashcroft*, 370 F.3d 994, 997-998 (9th Cir. 2004) (holding that "[l]ower courts are, thus, not free to address the underlying merits without first determining the exhaustion requirement has been satisfied or properly waived").

The Second Circuit has noted that a number of courts have waived exhaustion of remedies in cases challenging a BOP policy on the ground of futility, citing the BOP's "determined adherence to enforcing the policy." *United States v. Arthur*, 367 F.3d 119, 123 n.1 (2d Cir. 2004) (collecting

cases). In a different context, the Supreme Court has described some circumstances in which exhaustion of agency remedies may not be effective:

> [A]n administrative remedy may be inadequate "because of some doubt as to whether the agency was empowered to grant effective relief." *Gibson v. Berryhill*, 411 U.S. at 575, n.14. For example, an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute. . . . In a similar vein, exhaustion has not been required where the challenge is to the adequacy of the agency procedure itself, such that "'the question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit.'" *Barry v. Barchi*, 443 U.S. 55, 63, n.10, 61 L. Ed. 2d 365, 99 S. Ct. 2642 (1979) (quoting *Gibson v. Berryhill*, 411 U.S. at 575). Alternatively, an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested. *McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 675, 10 L. Ed. 2d 622, 83 S. Ct. 1433 (1963) (students seeking to integrate public school need not file complaint with school superintendent because the "Superintendent himself apparently has no power to order corrective action" except to request the Attorney General to bring suit); *Montana National Bank of Billings v. Yellowstone County*, 276 U.S. 499, 505, 72 L. Ed. 673, 48 S. Ct. 331 (1928) (taxpayer seeking refund not required to exhaust where "any such application [would have been] utterly futile since the county board of equalization was powerless to grant any appropriate relief" in face of prior controlling court decision).

*McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992) (citation omitted).

In this case, the administrative remedy process described in the regulations appears to be best suited to complaints that can be resolved by institution staff. This is significant here because the petitioner has cited multiple reasons for the denial of his placement in the CCC. Certainly he attacks the validity of the regulation restricting the BOP's discretion, but he also notes the lack of a place for him due to capacity and his failure to have the required health insurance. Perhaps these problems could be worked through with BOP officials. If not, at least an administrative record on these limitations could be developed.

On the other hand, the petitioner's challenge to the regulation could not have been resolved "informally" by institution staff, the Warden, or the Regional Director. Because the petitioner in the present case is challenging the regulation itself, the Court finds persuasive the Third Circuit's determination in *Woodall* that exhaustion would be futile. The fact that two circuits have held that the regulations are invalid should be fair notice to the BOP that the regulations are subject to challenge. If the rulings of the First, Second, Third, and Eighth Circuits have not persuaded the BOP to rescind the regulations, it is not likely that an administrative remedy appeal by a federal inmate would cause the BOP to change its position. This Court is convinced that the BOP's litigation position evidences a determined adherence to the policy embodied in the regulation. For the purpose of the present motion, therefore, the Court finds that the petitioner's failure to seek administrative relief is not fatal to his petition.

C.

This Court must consider four factors when determining whether to issue a preliminary injunction: (1) the likelihood of the party's success on the merits of the claim; (2) whether the injunction will save the party from irreparable injury; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be served by the injunction. *Summit County Democratic Cent. and Executive Comm. v. Blackwell,* 388 F.3d 547, 552 (6th Cir. 2004); *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions,* 134 F.3d 749, 753 (6th Cir. 1998); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). The Sixth Circuit has explained that one purpose of a preliminary injunction "under Rule 65 is to preserve the status quo

so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996).

"[T]he four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). The district court need not make specific findings regarding each of the four factors if fewer factors are dispositive of the issue. *See Six Clinics Holding Corp.,* 119 F.3d at 399. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000). The plaintiffs' burden is the same irrespective of whether the relief sought is mandatory or prohibitive. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

The Sixth Circuit has instructed that the likelihood-of-success factor should be analyzed in conjunction with the other factors in the following manner:

> In applying this test, we balance the factors. The Appellant must demonstrate a likelihood of success on the merits to a degree inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. "[I]n order to justify a stay of the district court's ruling, the [Appellant] must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted."

*Family Trust Found. of Kentucky, Inc. v. Kentucky Judicial Conduct Comm'n*, 388 F.3d 224, 227 (6th Cir. 2004). Although the court of appeals analyzed likelihood of success when reviewing a motion for stay pending appeal, the tests are identical. *Blackwell*, 388 F.3d at 552 (stating the "factors to be considered in determining whether an order should be stayed are the same factors considered in determining whether to issue a temporary restraining order [or] a preliminary injunction").

In this case, the Court finds the second factor dispositive of the petitioner's motion for a preliminary injunction. Based on the decisions of four other circuits, the Court finds that the petitioner has brought a credible challenge to the validity and implementation of 28 C.F.R. § 570.20 and 28 C.F.R. § 570.21. *See Levine*, 455 F.3d at 86; *Woodall*, 432 F.3d at 249; *Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17, 28 (1st Cir. 2004). However, the Court's determination to follow those holdings would not afford the petitioner relief, nor would it provide a basis on which to issue a preliminary injunction. The petitioner simply has not demonstrated irreparable harm arising from the enforcement of the challenged regulations because he has not shown that he otherwise is eligible for CCC placement. The petitioner explains in his petition two other grounds cited by the BOP for why he cannot be placed in a CCC: first, because the halfway house is full until February 2007; and second, because the petitioner cannot be placed in such a facility without hospitalization insurance. The petitioner does not challenge either of these grounds for denying him CCC placement, and there is no evidence in the present record that suggests those reasons are a pretext for enforcement of the regulations. Therefore, even if the Court struck down the regulations, the petitioner would not benefit because he is not currently eligible to be placed in a halfway house.

The failure to demonstrate irreparable harm is fatal to the petitioner's request for a preliminary injunction. Therefore, the Court need not evaluate the other factors.

III.

Because the petitioner has not demonstrated a right to the equitable relief he seeks, the Court must deny the motion for preliminary injunction.

Accordingly, it is **ORDERED** that the petitioner's motion for preliminary injunction [dkt #4] is **DENIED**.

                                            s/David M. Lawson  
                                            DAVID M. LAWSON  
                                            United States District Judge

Dated: September 1, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 1, 2006.

                              s/Tracy A. Jacobs  
                              TRACY A. JACOBS